UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PETER M. BERNEGGER,

        Plaintiff,

  v.                                                    Case No. 08-C-977

TINA MORRISSETTE,
JEFF KLEEMAN,
DOES 1-4,

        Defendants.

## DECISION AND ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS

     Plaintiff Peter M. Bernegger filed this lawsuit *pro se* in state court asserting various federal statutory and state common law claims against defendants Tina Morrissette, Jeff Kleeman and four unnamed Waupaca County officials. Bernegger alleges that Morrissette and Kleeman, who are both United States Probation Officers, caused him injury by misrepresenting information in a pretrial release report, or bond study, following his arrest on a federal warrant. He claims that as a result of the false information contained in the report, he was incarcerated for five days. Bernegger further alleges that Kleeman violated his rights under the Fourth Amendment by searching his home and seizing information. Bernegger seeks relief under 42 U.S.C. §§ 1983 and 1985 and the United States and Wisconsin constitutions. (Am. Compl. at 1.) Bernegger also claims entitlement to relief under 18 U.S.C. §§ 242 and 371 and "the Federal Equal Access Act". (*Id.*)

Based upon the status of the two probation officer defendants as federal employees, the case was removed to federal court pursuant to 28 U.S.C. § 1442(a)(1). (Doc. # 1.) Bernegger has filed various motions, including a Motion to Dismiss and Strike Defendants' Notice of Removal (Doc. # 9), which I construe as motions to remand. In addition, the federal defendants have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that they are immune from liability. (Doc. # 22.). For the reasons stated below, Bernegger's motion to remand, along with his other motions, will be denied, and the federal defendants motion to dismiss will be granted.

## BACKGROUND

This case arises out of Bernegger's arrest on August 15, 2008 on a federal warrant issued by the United States District Court for the Northern District of Mississippi based on a six-count indictment charging Bernegger with conspiracy, mail fraud and bank fraud. *United States v. Bernegger*, Case No. 08-M-657 (E.D. Wis. Wis.), doc. # 1. Following his arrest, Bernegger alleges he was transported to Green Bay where he met with defendant Morrissette who told him she would interview him to determine his eligibility for a public defender and "to develop a story for the court." (Compl. ¶ 10.) Bernegger alleges that all of the named defendants, including Morrissette, "provided false and misleading information to the Federal Court." (*Id*. at ¶¶ 12, 30, 47-51, 57-65.) As a result, Bernegger alleges that he was held in the Brown County Jail where he remained for five days. (*Id*. at ¶ 13.) As proof the false information was provided the Court, Bernegger points to the fact that "once the second hearing was held the Federal Court immediately released [him] on his own recognizance." (*Id.* at 93.)

In addition, Defendant Kleeman is alleged to have illegally searched his home. More specifically, Bernegger alleges that Kleeman searched every room of his house, to include the garage and basement, "seized information" while inside and "wrote down notes on a pad." (*Id*. at ¶¶ 38, 41.) Bernegger alleges that Kleeman lied about his intentions for visiting the home and that Bernegger granted Kleeman entry under coercion. (*Id*. at ¶ 39.)

By way of injury, Bernegger alleges that his brief stint in jail, *inter alia*, caused emotional distress, embarrassment and harmed his "ability to earn income; crippling his business opportunities." (*Id.* ¶ 21.) He claims that Kleeman's search deprived him of "his liberty and/or enjoyment in exercising dominion over his home." (*Id.* ¶ 27.) For relief, Bernegger seeks actual damages, triple punitive damages, costs and "[a] court order to Defendants to provide a truthful written statement of accounts to the Federal Court of Green Bay." (*Id.*, Section VI, subsections A. through F.)

**ANALYSIS**

**I. Removal**

Before addressing the defendants' motion to dismiss for failure to state a claim, it is first necessary to address the issue of whether the case was properly removed. Bernegger argues that removal under 28 U.S.C. § 1442(a)(1) was improper because that section authorizes removal only by federal officers acting under "title or authority claimed under any Act of Congress for the apprehension or punishment of criminals . . . ." 28 U.S.C. § 1442(a)(1). Bernegger argues that since he is not a criminal, § 1442(a)(1) does not apply.

3

The argument is based on a misreading of the statute. Section 1442(a)(1) authorizes removal of a civil or criminal action commenced in State court by:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). By its terms, the statute allows for removal of any action against an officer of the United States who is sued in either an official or individual capacity "for any act under color of such office *or* on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminal or the collection of revenue." *Id.* Bernegger's argument ignores the italicized "or" and assumes removal is permitted only if the officer is involved in the apprehension or punishment of criminals, or the collection of revenue. The language of the statute is not so narrow. It clearly covers United States Probation Officers carrying out their duties, and it is clear from the complaint that Morrissette and Kleeman were doing just that.[1] It thus follows that they were authorized to remove Bernegger's case from state court pursuant to 28 U.S.C. § 1442(a)(1).

Bernegger also objects to the form of the removal notice and claims that the federal defendants have somehow violated the rules of civil procedure, the Constitution, the rules of professional responsibility, and even the criminal law, by removing the case to federal court. He contends that "Defendants and their counselors have violated FRCP 4, 5, 11, 12, due process, civil

---

[1] I note in this regard that the complaint identifies only Morrissette as a probation officer. (Am. Compl. ¶ 10.) I take judicial notice, however, of the fact that Kleeman has been appointed and currently serves as a probation officer in this district. *See* 18 U.S.C. § 3602 (appointment of probation officers made by district courts and record of appointment kept by the court).

4

rights, obstructed justice and violated countless ethics of the rules of professional conduct [sic], violated oaths of office." (Doc. #7 at 2.) His affidavit, however, simply states that copies of the state court pleadings were not attached to the notice of removal that he received in the mail and that he received no summons or certificate of service. (*Id.* at 4.)

Other than the fact that he was not provided copies of his own pleadings when he was served with the notice of removal, it is difficult to determine precisely what Bernegger believes was improper about the defendants' removal of his action. The procedure for removal of cases to federal court is set forth in 28 U.S.C. § 1446. That section requires a defendant or defendants who desire to remove any civil action from a State court to file in the United States district court for the district or division in which the action is pending a signed notice of removal "containing a short plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). That is precisely what the defendants did. The statute further provides:

> Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

28 U.S.C. § 1446(d). There is no requirement that a copy of the pleadings that both the plaintiff and the State court already have be served with the notice of removal, and the Federal Rules of Civil Procedure do not apply until after the action is removed from State court. Fed. R. Civ. P. 81(c)(1). Thus, the fact that the defendants did not attach copies of those pleadings to the notice served on Bernegger was not improper and certainly does not constitute grounds for remand.

While it appears the notice of removal may not have been mailed to either Bernegger or the State court until some five days later (three days, excluding weekends) (Doc. # 5), this also does not

5

constitute grounds for remand. The statute does not define the word "promptly", and courts have found delays substantially longer than five days insufficient to warrant remand. *See, e.g., Nixon v. Wheatley*, 368 F. Supp. 2d 635 (E.D. Tex. 2005) (holding that despite 22-day delay in filing notice with State court, "Defendants' actions in effecting removal were reasonably prompt under the circumstances, and remand based on undue delay in filing the notice of removal in state court is inappropriate"); *Whitney v. Wal-Mart Stores, Inc.*, No. Civ. 04-38-P-H, 2004 WL 1941345, at *1 (D.Me. Aug.31, 2004) (six-month delay in filing a copy of the notice of removal in state court did not thwart the purpose of the removal statute); *Parker v. Malone*, No. Civ. A. 7:03CV00742, 2004 WL 190430, at *2 (W.D.Va. Jan.15, 2004) (twenty-two day delay in notifying the state court clerk of removal was sufficiently prompt and did not upset any statutory purpose). Moreover, the failure to promptly serve a notice of removal would be merely a procedural defect and, therefore, would not defeat federal jurisdiction in any event. *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 547 (5th Cir. 1985). A plaintiff waives procedural defects of this nature, including the timeliness of a removal notice, by failing to object. *Venezia v. Robinson*, 16 F.3d 209, 211 (7th Cir. 1994). Bernegger has not objected to the timeliness of either the removal notice itself or the service of it upon him and the State court. I thus find no basis for remand and deny his motion to dismiss and strike.

**II. Motion To Dismiss**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) mandates that a claim contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that a complaint must contain factual

6

allegations which are enough "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). In ruling on a motion to dismiss under Rule 12(b)(6), a court must view the plaintiff's factual allegations and any inferences reasonably drawn from them in a light most favorable to the plaintiff. *Yasak v. Retirement Bd. of the Policemen's Annuity and Benefit Fund of Chi.*, 357 F.3d 677, 678 (7th Cir. 2004).

A motion to dismiss can also be used to assert a defense of absolute immunity. *Dawson v. Newman*, 419 F.3d 656 (7th Cir. 2005). Indeed, "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). These are the principles that govern the determination of the defendants' motion to dismiss.

Several of Bernegger's claims can be summarily dismissed without considering the question of immunity. The two sections Bernegger cites from Title 18 are criminal statutes and do not authorize a private right of action. Bernegger's attempt to assert a claim under those provisions therefore fails. The Equal Access Act, 20 U.S.C. §§ 4071-4074, which Bernegger also cites as a basis of relief, requires public secondary schools that receive federal funds and have limited open fora to provide access or a fair opportunity for access to student groups wishing to meet on school premises, regardless of the religious, political, philosophical, or other content of their speech. It may be that Bernegger meant to refer instead to the Equal Access to Justice Act, 28 U.S.C. § 2412, which provides for an award of attorney's fees to the prevailing party in some circumstances. Regardless, neither Act has application here, and so any claims asserted thereunder are dismissed

7

as well. The same is true of 42 U.S.C. § 1983, which applies to government officials acting under color of state law. Both Morrissette and Kleeman are federal officers acting under color of federal law, and thus § 1983 does not apply. As to the remaining claims, the probation officer defendants claim they are entitled to dismissal on grounds of absolute immunity, and it is to that issue that I now turn.

It is well established that judges who act within the scope of their authority enjoy absolute immunity from damage suits. *Stump v. Sparkman*, 435 U.S. 349 (1978); *Pierson v. Ray*, 386 U.S. 547 (1967). "Judicial immunity was recognized at common law 'as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error' and to 'protect[ ] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.'" *Richman v. Sheahan*, 270 F.3d 430, 434-35 (7th Cir. 2001) (quoting *Forrester v. White*, 484 U.S. 219, 225 (1988)).

The absolute immunity that protects judges has been extended to "[n]on-judicial officials whose official duties have an integral relationship with the judicial process." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986). Thus, officials engaged in quasi-judicial decision making, such as members of a parole board, have been held absolutely immune from liability for their decisions. *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443-44 (7th Cir.1996); *Walrath v. United States*, 35 F.3d 277, 281-82 (7th Cir. 1994). Whether a government official is entitled to this type of absolute immunity from a suit depends on "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

The courts have also recognized a different sort of quasi-judicial immunity for officials whose functions are further removed from the core dispute resolution function of judges, but are

8

taken pursuant to the explicit direction of a judicial officer, such as a clerk. *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992). "The policy justifying an extension of absolute immunity in these circumstances is to prevent court personnel and other officials from becoming a lightning rod for harassing litigation' aimed at the court." *Richman*, 270 F.3d at 435 (internal quotations omitted). Absolute immunity has also been extended to prosecutors for their decision to prosecute and their conduct of the government's case on the theory that these activities are "intimately associated with the judicial phase of the criminal process . . . ." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Van De Kamp v. Goldstein*, 129 S.Ct. 855, 860 (2009). The considerations underlying the extension of absolute immunity to prosecutors include the "concern that harassment by unfounded litigation" could both "cause a deflection of the prosecutor's energies from his public duties" and also lead the prosecutor to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423. Given that "a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate", *id.* at 425, this is no small concern.

The same considerations have led courts to extend the same absolute immunity to federal probation officers involved in the preparation of pre-sentence reports. Thus, in *Dorman v. Higgins*, the Second Circuit observed:

> . . . . especially given the propensity of prisoners to file lawsuits challenging all aspects of the proceedings against them, we perceive a need for the probation officer to have absolute immunity from a civil suit for damages. If these officers were held personally liable in damages as guarantors of the quality of their evidence, they might hesitate to bring forward some of the information they have collected because it is very difficult if not impossible for the officers to be absolutely certain of the objective truth or falsity of the statements made to them.

9

821 F.2d 133, 138 (internal quotation marks and citations omitted). The Fifth Circuit reached the same conclusion in *Spaulding v. Nielsen*:

> We hold that a probation officer is entitled to the same protection when preparing and submitting a presentence report in a criminal case. The report is an integral part of the sentencing process, and in preparing the report the probation officer acts at the direction of the court. *See* Fed. R. Crim. P. 32. We think it apparent that this narrow function is "intimately associated with the judicial phase of the criminal process" and thus, where, as here, the challenged activities of a federal probation officer are within this function, he or she is absolutely immune from a civil suit for damages.

599 F.2d 728, 729 (5th Cir. 1979); *see also Forrester v. White*, 792 F.2d 647, 657 (7th Cir. 1986) (citing *Spaulding* and noting that "probation officers have derivative absolute immunity"), *rev'd on other grounds*, 484 U.S. 219 (1988); *Kaufmann v. United States*, 840 F. Supp 641, 656 (E.D. Wis. 1993) ("Probation officers have quasi-judicial absolute immunity from damage claims for alleged misconduct in the investigation and preparation of pre-sentence reports.").

The immunity afforded federal probation officers from misconduct alleged in the preparation of pre-sentence reports also applies to the preparation of pretrial bond reports. *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 348 (10th Cir. 1986). The federal probation service is an arm of the court, and not an investigative arm for the prosecution. Thus, a pretrial release report, just as a pre-sentence report, is prepared exclusively at the discretion of and for the benefit of the court. *Id.* Because such activities are intimately associated with the judicial phase of the criminal process, the probation officer who performs them is immune from civil suit for damages for alleged misconduct in doing so. *Id.*

It follows from the foregoing the defendants Morrissette and Kleeman are immune from liability for any allegedly false statements made in connection with the bond study or pretrial release report. It is extremely doubtful that Bernegger's claim that false information was knowingly

10

included in the bond study has any merit in any event. He fails to specify in his complaint what the allegedly untruthful statements were that caused him to be detained, instead pointing to the fact that he was released on his own recognizance at the detention hearing as if that constitutes evidence of false information in the report.[2] (Am. Compl. ¶ 14.) Bernegger also ignores the fact that upon motion of the government at the initial appearance, the court must hold a detention hearing in any case that involves "a serious risk the such person will flee;" or "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, intimidate, or attempt to threaten, injure or intimidate, a prospective witness or juror . . . ." 18 U.S.C. § 3142(f)(2). Moreover, on request of the government, a continuance of no more than three days, excluding weekends and holidays, must be granted during which the defendant must be detained. *Id.* The government apparently made such a request here and, given the fact that Bernegger was named in a six-count indictment charging him with conspiracy, mail fraud and bank fraud, each punishable by more than 20 years in prison, issued out of United States District Court from another state where Bernegger had apparently previously been in business, the case clearly involved, at least on initial review, "a serious risk" that Bernegger would flee. Thus, wholly apart from anything Morrissette may have included in her report, it is likely that Bernegger would have been detained for the five days (three days plus the weekend) for which he now seeks compensation. As weak as his claim appears, however, there is no reason to go further than to say that the defendant probation officers are absolutely immune from liability incurred in connection with their preparation of the pretrial release

---

[2]In his brief in opposition to the defendants' motion, Bernegger suggests that the false information involves the statement in Morrissette's report that Bernegger had "very large gun lockers" in his home, information she had apparently received from Waupaca County Sheriff's deputies. (Doc. # 25, at 13, 16, 17.) In fact, Bernegger claims, they were merely gun cabinets made of glass and wood. (*Id.* at 13.) This hardly amounts to a false statement.

11

report or bond study. His claim that false statements were included in the report will therefore be dismissed.

There remains Bernegger's claim that Kleeman is liable for conducting an unreasonable search of his home without voluntary consent to enter. (Compl. ¶¶ 23, 26, 39.) The defendants note that federal probation officers are required to conduct home assessments, which include performing a walk-through of the home, during pre-trial supervision. This requirement is set out in Chapter V of Monograph 111, *The Supervision of Federal Defendants* (2007), a publication of the Administrative Office of the Courts approved by Judicial Conference. Monograph 111, which has been incorporated in the *Guide to Judiciary Policies and Procedures*, states:

> A home assessment is required during the initial assessment investigation and upon each change of residence. A home assessment includes the following elements:
>
> •   a review of documentation such as rental agreements, mortgage documents and receipts, and utility billings to verify ownership and monthly living expenses;
>
> •   observation of the interior to confirm the defendant's residence;
>
> •   verification of who else is residing at the residence; and
>
> •   plain view observation for evidence of contraband (see V-19 for additional guidance on responding to contraband in plain view).

12 *Guide to Judiciary Policies and Procedures* ("the *Guide*"), Ch. 6, Monograph 111 at V-3, found at http://jnet.ao.dcn/img/assets/5118/suprvfeddef-03071.pdf (last visited March 25, 2009). The defendants contend that Kleeman was simply performing his duties for the Court in making a home visit assessment pursuant to Bernegger's "Pre-trial Release Reporting Instructions" in the underlying criminal case. (Doc. # 25, Ex. 4.) The Instructions expressly state: "Home visits will be conducted

12

throughout your period of supervision." (*Id.*) It is just such a home visit, the defendants contend, that Bernegger is referring to in his complaint.

The question of whether Kleeman is entitled to immunity is separate and distinct from the question of whether he entered Bernegger's home without consent to conduct a search. It is only the former question that is raised by the defendants' motion to dismiss; the allegation that Kleeman entered and searched the home without voluntary consent must be accepted as true at this stage of the proceeding. *Yasak*, 357 F.3d at 678. In deciding the former question, the cases discussed above indicate that Kleeman would have immunity for the conduct alleged if he was acting either at the direction of the judge, *Kincaid*, 969 F.2d at 601, or his actions were "intimately associated with the judicial phase of the criminal process", *Imbler*, 424 U.S. at 430. In order to answer this question, it is first necessary to consider the nature and function of pretrial services in the federal courts.

"The Pretrial Services Act of 1982 established pretrial services in each judicial district in order to assist judicial officers both in making pretrial release decisions and to supervise and monitor the conditions of release." *United States v. Hohn*, 8 F.3d 1301, 1305 (8th Cir. 1993); *see* 18 U.S.C. §§ 3152-3156. Pretrial Services principally conducts investigations, makes recommendations regarding detention or release, and supervises defendants for compliance with conditions of release. 18 U.S.C. § 3154. The various pretrial services offices operate under the general supervision of the Judicial Conference and/or the Administrative Office of the United States Courts. 18 U.S.C. § 3152(a) and (b). Among the express functions of Pretrial Services is the "[s]upervis[ion of] persons released into its custody under this chapter." 18 U.S.C. § 3154(3) The actions of pretrial services officers are considered "both a service to the court and an extension of the court." *Hohn*, 8 F.3d at 1305. According to the *Guide*, a properly qualified probation or pretrial

13

services officer "is appointed by a district court to serve within the jurisdiction and under the direction of the court making the appointment." 10 *Guide*, Ch. 1, Pt. B.

Defendant Kleeman is one of the federal probation officers assigned to provide pretrial supervision for persons released on pretrial supervision by this Court. As a condition of his release under 18 U.S.C. § 3142(c), Bernegger was ordered to "report to Pretrial Services as directed." (Doc. # 25, Ex. 3 at 2.) Thus, it was Kleeman's duty to supervise him. It is clear from Monograph 111 that regular home visits, including home walk-throughs, are considered part of the "core activities" federal pretrial services officers are expected to perform in supervising a defendant who is released from custody pending trial. Monograph 111 at V-2. Indeed, it is described in the monograph as "[o]ne of the most valuable activities available to an officer" to accomplish the goals of pretrial supervision. *Id.* The monograph further states: "Core activities are to be undertaken in every case to appropriately monitor the defendant's compliance with the conditions of his release." *Id.* And while Appendix D to the monograph cautions that "[s]earches by probation officers are disfavored" and "should be conducted only (1) pursuant to conditions of release that specifically permit such searches or (2) pursuant to the consent of the client freely and voluntarily given," *Id.*, App. D-1, the monograph itself specifically states that "[h]ome contacts and assessments are *not* searches. When performing a walk-through, officers may not intrude into enclosed areas such as refrigerators, drawers, or closets without the consent of the defendant." Monograph 111 at V-3 (italics original).

From the foregoing, it follows that Kleeman was acting at the direction of the court in conducting the walk-through of Bernegger's home described in the complaint. He is therefore immune from liability. Just as a jailer who holds a defendant who has been ordered detained pending trial is acting at the direction of a judge and is therefore immune from liability for false

14

imprisonment, so too is a pretrial services officer who is ordered to provide pretrial supervision of a defendant and conducts a home contact as instructed by the *Guide*. While a defendant who is released on pretrial supervision certainly has far more freedom than one who is order detained, such freedom is nevertheless limited. Notwithstanding the absence of a conviction and the presumption of innocence a person facing criminal charges enjoys, there is no doubt that such individuals may be lawfully incarcerated prior to a determination of their guilt or innocence. *Bell v. Wolfish*, 441 U.S. 520, 523 (1979). Bernegger could have declined supervised release and remained in custody.[3] He chose not to, however, and thus is subject to the conditions imposed by the Court, including supervision by pretrial services. Such supervision, as described by the Guide, includes being subject to periodic home contacts, including walk-throughs, in which the officer is required to observe the conditions of the home. The probation officer ordered to provide such supervision is therefore immune from liability and Bernegger's claim against Kleeman is therefore dismissed.

**III. Other Motions**

Bernegger has also filed various other motions. He filed a motion to strike the defendants' motion requesting sixty days in which to respond to the complaint so that the Assistant United States Attorney ("AUSA") assigned to the case could locate and review tapes and transcripts of proceedings in the underlying criminal action to determine what defenses were available. Bernegger claims he was not timely served with the motion (he wasn't; it was mailed to him some five days

---

[3]In fact, Bernegger was later taken into custody and transported to Mississippi in response to a motion to revoke his pre-trial release in the underlying case that was filed after he left a voice mail message for an individual threatening to "put an ax in your forehead, legally speaking." *United States v. Bernegger*, Case No. 08-M-657 (E.D. Wis.), Docket # 9. Although it appears that the district court in Mississippi released Bernegger on bail, the allegation formed the basis for entry of an order denying his motion to amend travel restrictions. *United States v. Bernegger*, Case No. 1:07CR176, (N.D. Miss.) Docket # 49.

15

after it was filed along with the notice of removal) and challenges the AUSA's claim that she needed an additional sixty days to prepare a response. Bernegger also filed a motion requesting the Court to find the United States Attorney and the AUSA assigned to the case in contempt for falsely stating they needed an additional sixty days to gather the information needed to prepare a response. The AUSA assigned to the case also sent a letter to the Court, copied to Bernegger, requesting that in the interest of judicial economy the Court hold Bernegger's various motions in abeyance until a decision is made on the as of then yet to be filed motion to dismiss on grounds of absolute immunity. Bernegger responded to counsel's letter with a brief pointing out that it failed to comply with Fed. R. Civ. P. 7, which requires that a request for a court order be made by motion, and Fed. R. Civ. P. 10, which sets out the formal requirements for motions. He also claimed that the letter did not comply with the Civil L.R. 7.1, which requires that a brief, or a statement indicating that no brief will be filed, accompany the motion, and my own "Preferred Procedures" which are listed at the Court's website and recommend that a party consult with opposing counsel before making such requests and notify the Court in the body of the motion if opposing counsel objects.

While not denying the procedural violations by counsel for the defendants, I conclude that none of them warrant the relief requested and, further, that there is no basis for a finding of contempt. Counsel's request for an additional sixty days to gather material and formulate a response was reasonable, given the unusual nature of Bernegger's claims against the probation agents involved in his supervision and the immunity issue involved. The Court therefore granted the motion without waiting for a response. (Nov. 14, 2008 margin order.) Counsel certainly did not demonstrate contempt for the Court in requesting such an extension. Her letter request that Bernegger's various motions be held in abeyance pending the disposition of the motion to dismiss

16

was also reasonable. Proceeding in that fashion preserved resources of both the United States Attorney's office and the Court. It also served the purposes underlying the doctrine of quasi-judicial immunity, *Mitchell,* 472 U.S. at 526, and it did not prejudice Bernegger. Although Fed. R. Civ. P. 7(b)(1) states that "***In General***", "[a] request for a court order must be made in writing unless made by motion," the rules are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Toward that end, a court has discretion to permit parties to address procedural or timing issues by letter. Violations of the district's local rules are even less rigid and are "intended to be enforced primarily upon the Court's own initiative . . . ." General L.R. 1.1. And, of course, my own preferred procedures are not binding at all. In any event, the Court entered no order in response to counsel's letter request, though it did elect to await the completion of briefing on the defendants' motion to dismiss before addressing the various motions Bernegger filed along the way. For all of the foregoing reasons, Bernegger's motion to strike the defendants' previously granted motion for an extension of time is denied, as is his motion for contempt.

One final matter merits comment. The defendants point out that over the course of this litigation, "Bernegger, in his numerous pleadings filed in this case, has also accused the [AUSA assigned to the case] and the United States Attorney for this district of committing ethical violations (Docket No. 9); moved [they] be held in contempt of court for having 'grossly lied to the court' (Docket 20); and stated that '[AUSA] Lennie Lehman and [United States Attorney] Steven Biskupic must be taking some of the drugs seized from criminals they arrest and smoking it.'" (Docket No. 7). (Def.'s Br. In Supp. Summ. J. Mot. at 7 n4.) The defendants contend that dismissal of this type of "vexatious litigation" is precisely the function of the defense of absolute immunity. (*Id.*)

17

The Court agrees. Were it not for the fact that Bernegger's case is being dismissed on its merits, the Court would give serious consideration to dismissal as a sanction for incivility. In view of the fact that Bernegger has had other cases before the Court, including one that is still pending, however, he is hereby warned that such attacks on the character of a party, witness or counsel in any case before this Court may result in sanctions, including but not limited to dismissal.

## CONCLUSION

For the reasons set forth above, I conclude that both of the federal defendants are absolutely immune from liability for the actions alleged in the complaint. Accordingly, the defendants' motion to dismiss (Doc. #22) is **granted** and all claims against them are dismissed. Although it seems unlikely that Bernegger has any viable claim against the four Doe Defendants, I need not address that issue since he has failed to serve them in the time allowed under either state or federal law. *See* Fed. R. Civ. P. 4(m). All claims against them are therefore also dismissed, but without prejudice. Bernegger's motions to dismiss and strike the notice of removal (Doc. #s 6 and 12), his motion to strike the defendants' motion for an extension of time to respond to the complaint (Doc. # 9), and his motion for contempt (Doc. # 19) are **denied**. The Clerk is directed to enter judgment in favor of the defendants and against Bernegger.

**SO ORDERED** this     30th     day of March, 2009.

       s/ William C. Griesbach
       WILLIAM C. GRIESBACH
       United States District Judge